IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Janet Tillman, individually and on behalf of all others similarly situated, | Case No. 4:19-cv-02563-SAL |
| Plaintiff, | **ORDER** |
| v. | |
| Highland Industries, Inc., | |
| Defendant. | |

This matter is currently before the court on Plaintiff Janet Tillman's ("Plaintiff") Motion to Certify Class (the "Motion"). [ECF No. 76.] Defendant Highland Industries, Inc. ("Defendant") responded to the Motion, and Plaintiff replied. [ECF Nos. 84, 85.] The court held a hearing on July 27, 2021, and the parties submitted supplemental materials for the court's consideration. [ECF Nos. 124, 125, 132.] The matter is fully briefed, argued, and ripe for resolution by the court.

## BACKGROUND

Plaintiff is a property owner in Cheraw, South Carolina. [ECF No. 126, 3d Am. Compl.] Her property "borders" property now owned by Defendant. *Id.* at ¶ 1. Defendant's real property surrounds an industrial plant, which Defendant currently operates to manufacture and produce industrial fabric (the "Plant Site"). *Id.* at ¶ 3(b).

Prior to 1988, Burlington Industries, Inc. ("Burlington") owned the Plant Site, as well as additional real property not purchased by Defendant (*e.g.*, sludge drying beds). *Id.* at ¶ 8; [*see also* ECF No. 105.] During Burlington's ownership of the Plant Site, it operated two divisions: (1) industrial fabrics and (2) fiberglass. In 1988, Defendant purchased the Plant Site and Burlington's

1

industrial fabric business. [ECF No. 105 at p.3.] Defendant did not purchase the fiberglass business or the sludge drying beds. It purchased a portion of the Western Ditch, but not its entirety.

This lawsuit involves the alleged polychlorinated biphenyls ("PCB") contamination of certain properties in areas surrounding the Plant Site. In that regard, it is undisputed that Burlington, not Defendant, used PCBs in the process of manufacturing fiberglass. *Id.* Plaintiff contends that Burlington's fiberglass operations resulted in disposal of PCBs in the sludge drying beds and discharge of PCBs into an open ditch. 3d Am. Compl. at ¶ 10. Further, Plaintiff claims that at the time Defendant purchased the Plant Site, it was "seriously contaminated with high concentrations of PCBs." *Id.* at ¶ 8. Plaintiff further claims that those PCBs have contaminated her property. *Id.* at ¶ 4. With respect to Defendant's liability, Plaintiff contends that Defendant knew or should have known that the property it acquired was seriously contaminated at the time of purchase, it "used and operated a storm water discharge pipe" that allowed movement of contaminates, *id.* at ¶ 16, it "failed to take appropriate action to prevent[] the movement of the contaminates from its property," *id.* at ¶ 17, and it was "aware of the propensity for flooding in the area in question, and knew or should have known that heavy rains and/or storms could and would cause further movement of contaminates from Defendant's site," *id.* at ¶ 18.

Plaintiff brought the instant action, individually and on behalf of others similarly situated,[1] against Defendant in the Court of Common Pleas for Chesterfield County, alleging four causes of action: (1) negligence/recklessness; (2) trespass; (3) nuisance; (4) injunctive relief. Defendant removed the case to this court on the basis of diversity jurisdiction. [ECF No. 1.] At summary

---

[1] At the time of removal, there were five individual cases pending in this District: *Martin v. Highland Industries, Inc.* (4:18-cv-3143), *Lewis v. Highland Industries, Inc.* (4:19-cv-01251), *Morrell v. Highland Industries, Inc.* (4:19-cv-01252), *Stokes v. Highland Industries, Inc.* (4:19-cv-01253), and *Watson v. Highland Industries, Inc.* (4:19-cv-2338).

judgment, the court held that Defendant was entitled to judgment as a matter of law on one issue: "Pursuant to the plain language of the Assumption Agreement, [Defendant] did not assume liability for *Burlington's* discharge and release of PCBs as part of its fiberglass business operations." [ECF No. 105 at p.16.] The summary judgment ruling did not impact any of Plaintiff's theories regarding Defendant's liability for its own actions or inactions that allegedly resulted in the movement of PCBs from those portions of the Plant Site that Defendant purchased to putative class members' properties. *Id.*; *see also id.* at p.16 n.12 (recognizing Defendant's distinction between PCBs on the Plant Site at the time of purchase and Defendant's responsibility for Burlington's actions in releasing PCBs).

On September 18, 2020,[2] Plaintiff moved to certify a class of plaintiffs pursuant to Federal Rule of Civil Procedure 23(b)(3). [ECF No. 76.] As an alternative basis for certification, Plaintiff moved to certify a "liability" issue class pursuant to Federal Rule of Civil Procedure 23(c)(4). *Id.* At the time of the Motion, Plaintiff's proposed class was defined to include:

> All owners of real property in Cheraw, South Carolina located within five hundred (500) feet of the Surface Water Drainage Corridor which properties have been impacted by PCB contamination emanating from the Highland Industries Plant Site. Said Surface Water Drainage Corridor extends from the Western Ditch at Highland Industries Plant Site for approximately 3.2 miles to its convergence with the Pee Dee River, and includes said Western Ditch; an unnamed intermittent creek/ditch into which it flows; Various wetlands through which it flows; Flowing then in an easterly direction to Wilson Branch; then in a Northeasterly

---

[2] The court notes that the motion was filed shortly after the court's September 8, 2020 order on Defendant's Motion for Partial Summary Judgment. [ECF No. 70.] Defendant moved to reconsider and for clarification of the September 8, 2020 order on October 2, 2020, [ECF No. 78], the result of which was a May 4, 2021 order granting reconsideration and clarification and amending the summary judgment ruling. [ECF No. 105.] Thus, the certification briefing was completed prior to the amended summary judgment order. The parties submitted additional briefing on a proposed amended class definition and superiority in the context of Rule 23(c)(4), but did not submit (or request to submit) additional briefing on class certification as a whole following the May 4, 2021 order.

> direction to Huckleberry Branch and then in an easterly/southeasterly direction to its convergence with the Pee Dee River.

*Id.* at p.21.  Shortly before the scheduled hearing, Plaintiff proposed amending the class definition as follows:

> All owners of real property in Cheraw, South Carolina which abut the Surface Water Drainage Corridor and/or located within the Floodplain along said Surface Water Drainage Corridor, which have been impacted by PCB contamination emanating from the Highland Industries Plant Site.

[ECF No. 122.]  The proposed amended definition changes "within five hundred (500) feet" to "which abut the Surface Water Drainage Corridor and/or located within the Floodplain along said Surface Water Drainage Corridor."  *Id.*  In a footnote following "Surface Water Drainage Corridor," Plaintiff defines its parameters.  *Id.* at n.1.  Defendant filed an opposition to the Motion and a response and objection to the proposed amended class definition.  [ECF Nos. 84, 123.]  Following the July 27, 2021 hearing, both sides submitted supplemental materials on the superiority requirement.  [ECF Nos. 125, 132.]

## STANDARD

There are two parts to Rule 23 class certification.  A plaintiff must establish the prerequisites to certification, which are found in Rule 23(a), FRCP, and also satisfy at least one subsection of Rule 23(b), FRCP.  As recently reiterated by the Fourth Circuit Court of Appeals, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule and must do so with 'evidentiary proof.'"  *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 20-2184, 2021 WL 3379035, at *2 (4th Cir. Aug. 4, 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  For it is well established that "Rule 23 does not set forth a mere pleading standard."  *Dukes*, 564 U.S. at 350.

The four prerequisites to certification are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 460 (2013).

In addition to establishing all four Rule 23(a) prerequisites, a plaintiff must also meet the Rule 23(b) requirements for maintenance of a class action. In this case, Plaintiff is pursuing certification pursuant to Rule 23(b)(3), meaning she must show that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The two Rule 23(b)(3) requirements are often referred to as "predominance" and "superiority." The factors pertinent to assessing the predominance and superiority requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Certification is only proper if the court, after conducting a "rigorous analysis," is satisfied that the Rule 23 prerequisites have been satisfied. *Dukes*, 564 U.S. at 350–51. Often, that "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.

However, "the merits of a claim may be considered only when 'relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015) (quoting *Amgen*, 568 U.S. at 466). Because the class-action device is "an exception to the general rule that a party in federal court may vindicate only his own interests," "the district court is required to make findings on whether the plaintiffs carried their burden." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317–18 (4th Cir. 2006) (citation omitted).

In addition to certification of an action, Rule 23 provides a mechanism for certification of issues—Rule 23(c)(4), FRCP. The rule provides: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). It may be "used to separate 'one or more' claims that are appropriate for class treatment, provided that within that claim or claims (rather than within the entire lawsuit as a whole), the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003); *see also Romig v. Pella Corp.*, No. 2:14-cv-00433, 2016 WL 3125472, at *12 n.24 (D.S.C. June 3, 2016) ("Rule 23(c)(4) classes are not exempt from the requirements of Rule 23(a) or 23(b), though such requirements may apply differently.").

## DISCUSSION

The court begins with a threshold issue that touches every part of its analysis. The question of whether this case is or is not the type of case "repeatedly" certified by "[c]ourts around the country." [ECF No. 76 at p.2.] Plaintiff opens its motion with this proposition—the idea that this environmental contamination case is indistinguishable from 14 cases certified by various courts from New York to California. *Id.* at pp.2–4.[3] And if this case were proceeding against Burlington

---

[3] Not all were certified pursuant to Rule 23(b)(3).

as the defendant, Plaintiff might be correct.  It is easy to see how a case against Burlington, for its

release and disposal of PCBs, fits neatly into the rubric of those cases.  Those cases all involve a

company, such as Burlington, emitting or producing contaminants as part of the manufacturing

process,[4] leaking contaminants from its site,[5] or disposing of contaminants.[6]

The reality is that the present case is <u>not</u> the Burlington case.  The present case is not asking

whether Burlington is liable to Plaintiff for its release and discharge of PCBs into the environment.

Post-summary judgment, the present case is solely based on Defendant's actions—actions that did

not produce PCBs, discharge PCBs as part of its manufacturing process, or dispose of PCBs.

Because the present case is not one about emitting, leaking, or disposing contaminants as part of

Defendant's industrial fabric business, the cases relied upon by Plaintiff are inapposite.  In sum,

---

[4] *Olden v. LaFarge Corp.*, 383 F.3d 495, 497 (6th Cir. 2004) ("The plaintiffs claim that in the process of *making cement*, the Lafarge plant produces hazardous toxic waste and creates emissions with hazardous by-products.") (emphasis added); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471 (S.D. Ohio 2004) (two companies spilling and releasing toxins as part of their operations); *Bates v. Tenco Servs., Inc.*, 132 F.R.D. 160 (D.S.C. 1990) (factual details in order are limited, but suggest release of jet fuel as "the result of activities which have taken place" at the facility); *Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987) (producer of dioxin); *Ouellette v. Int'l Paper Co.*, 86 F.R.D. 476 (D. Vt. 1980) "airborne discharges from defendant's paper mill"); *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D. Ohio 1991) (emission of radioactive materials and non-radioactive hazardous wastes from plant operating for over 40 years).

[5] *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("The complaint alleges that a storage tank on Met-Coil's property has leaked a noxious solvent, TCE, that has seeped into the soil and groundwater beneath the class members' homes[.]"); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1144 (8th Cir. 1999) (allegations of "oil seepage" from petroleum refinery); *In re MTBE Products Liab. Litig.*, 241 F.R.D. 185 (S.D.N.Y. 2007) (a "station's underground tanks . . . leaking gasoline"); *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156 (S.D. W. Va. 1996) (leak of toxic substances during fire at a plant on February 15, 1996); *LeClercq v. Lockformer Co.*, No. 00-cv-7164, 2001 WL 199840 (N.D. Ill. Feb. 28, 2001) (leak of TCE produced as part of manufacturing process when storage tanks were filled).

[6] *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1192 (depositing by-product contaminants in a landfill); *Ludwig v. Pilkington N. Am., Inc.*, No. 03-cv-1086, 2003 WL 22478842 (N.D. Ill. Nov. 4, 2003) (disposal of arsenic as waste product from manufacturing).  One case is a bit of factual outlier, though still unanalogous to the present case against Defendant:  *Josephat v. St. Croix Alumina, LLC*, No. 99-cv-0036, 2000 WL 1679502 (D. V.I. Aug. 7, 2000) (one-time failure to secure bauxite dust in preparation for hurricane approaching).

despite Plaintiff's enthusiastic arguments, this case is not so easily analogized to a "single contaminant," "single source," and "single method of transport" case. [ECF No. 76 at p.1.] With this background in mind, the court turns to the parties' arguments.

## I.  Plaintiff's Position.

Plaintiff submits that this case involves a single contaminant (PCBs), from a single source (the Plant Site), with a single mode of transport (surface water), to a defined geographical area and is therefore appropriate for Rule 23(b)(3) certification. [ECF No. 76 at p.1.] Accordingly, Plaintiff seeks to certify a class consisting of approximately 90[7] properties that have suffered damages "as a result of [] PCB contamination." *Id.* at p.12.

Plaintiff contends all Rule 23(a) requirements are met, and the "central issue" of "*what* did Highland/Burlington do or not do that caused PCB's[sic] to end up on Plaintiff's property" predominates over every other issue in the litigation. *Id.* at p.23 (emphasis added). Further, Plaintiff argues the use of a class action here will save "valuable judicial resources" and "assur[e] uniformity," thereby satisfying the superiority requirement. *Id.* at p.25.

## II.  Defendant's Position.

In response, Defendant does not contest Rule 23(a)(2) commonality, Rule 23(a)(3) typicality, or Rule 23(a)(4) adequacy of representation. [ECF No. 84.] Defendant's disputes rest with, as it argues, Plaintiff's failure to meet her burden as to the implied ascertainability requirement, Rule 23(a)(1) numerosity, and Rule 23(b)(3)'s predominance and superiority requirements.

More specifically, Defendant submits that, despite Plaintiff's contentions, this is not a single source case. "There are multiple sources of PCBs from a liability standpoint." *Id.* at p.11. At the

---

[7] Plaintiff initially identified 65 "contaminated properties along the Drainage Corridor" but after additional testing, increased the number to 90. [*See* ECF No. 76 at pp.6, 11; *see also* ECF No. 122.]

heart of the summary judgment ruling, for example, PCBs exist in the "drying beds and the portion of the Western Ditch not purchased by Highland in 1988." *Id.* Following the amended summary judgment order, Defendant is not responsible for the PCBs that flow from property it did not purchase. Thus, Defendant submits that the answer as to which "source" the PCBs emanated from—Defendant's property or Burlington's property—"may differ for each putative class member." *Id.* In a similar vein, Defendant submits "[t]iming is also critical." *Id.* at p.12. And finally, Defendant submits that this is also not a single mode of transport case. *Id.* There are "multiple methods of transport" identified by Plaintiff, including stormwater discharge, flooding, and sediment movement. *Id.* According to Defendant, these differences render class certification inappropriate.

The court addresses each disputed requirement below.

## III. Ascertainability.

Defendant objects first to ascertainability. "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)).Other circuits describe this requirement as "ascertainability," but, "[h]owever phrased," it means "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* While a plaintiff "need not be able to identify every class member at the time of certification," class membership must be "ascertainable" "without extensive and individualized fact-finding or 'mini-trials.'" *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

In this case, Defendant argues that Plaintiff fails to meet her ascertainability burden because the putative class "is defined to include remediated and unremediated properties, of different types

and uses, which were contaminated at various levels with PCBs from multiple sources, at different times." [ECF No. 84 at p.17; *see also* ECF No. 123 at p.7.] Plaintiff disagrees, submitting that Defendant's argument is just another variation of its predominance argument. [ECF No. 95.] According to Plaintiff, a search of GIS maps and property records will reveal properties within the geographic framework outlined in the proposed class definition. *Id.* at p.6. While the use of the class definition's phrase "emanating from" gives the court some pause, it ultimately agrees with Plaintiff that the proposed class is sufficiently ascertainable.

The proposed revised class definition includes four requirements for class membership. First, the putative member must be an "owner of real property in Cheraw[,] South Carolina." [ECF No. 122.] As to this first factor, objective criteria will show that the putative member is a property owner in Cheraw, South Carolina or not. Second, the real property must "abut the Surface Water Drainage Corridor" (as defined) "and/or [be] located within the Floodplain [as depicted by the U.S. Federal Emergency Management Agency's 100-year floodplain maps] along" the Surface Water Drainage Corridor. *Id.* Again, the court can look to maps and other objective items to determine whether or not the property "abuts" the Surface Water Drainage Corridor" or falls "within" the floodplain. The third requirement is that the property is "impacted by PCB contamination." There is not anything subjective about the fact of existence of PCBs on property. They either exist on the property or they do not.

It is the fourth and final requirement that gives the court some pause. This requirement provides that the PCB contamination "emanat[e] from the Highland Industries Plant Site." *Id.* Defendant submits that the "issue of 'emanation' from property for which Highland is responsible . . . requires a separate, complex factual inquiry which cannot be presumed in the class definition."

10

[ECF No. 123 at p.5.]  This argument, while ultimately declined by the court in its assessment of ascertainability, is well taken.

The problem is that Defendant's argument seems to discount or ignore Plaintiff's reliance on the Aroclor numbers.[8]  [*See* ECF No. 76 at p.18 n.24.]  Plaintiff submits that an Aroclor number is a "distinguishing characteristic," meaning "the same Aroclor being present on a class member's property as the Aroclor's[sic] on the Highland Site is indicative that the Highland site was the source."  *Id.*  If the PCBs on the putative class member's property have Aroclor numbers that match that of the Aroclor at Defendant's site, the assessment of the fourth requirement of the class definition (while perhaps somewhat individualized) is not one that requires "*extensive*" fact-finding or "mini-trials."  *Adair*, 764 F.3d at 358 (quoting *Marcus*, 687 F.3d at 593) (emphasis added); *see also Romig*, 2016 WL 3125472, at *4 (finding ascertainability met where only one issue "even susceptible to the risk of a 'mini-trial'" remained).  Accordingly, the court finds that Plaintiff met her burden on the implied ascertainability requirement.  *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-cv-125, 2019 WL 8272995, at *4 (D. Vt. Aug. 23, 2019) ("The contamination has already received a great deal of local press coverage. Establishing who qualifies for each class will require organizational work. It will not be difficult conceptually.").

## IV. Rule 23(a)(1): Numerosity.

Rule 23(a)(1)'s numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Fourth Circuit has stated that "[n]o specified number is needed to maintain a class action under Fed. R. Civ. P. 23."  *Cypress*

---

[8] Importantly, the Aroclor numbers do not assist Plaintiff when it comes to the question of whether Plaintiff has a common method of proving that the PCBs that migrated to the putative class members' properties are PCBs from the property Defendant purchased from Burlington, as opposed to those portions of the property that Defendant did not purchase.

*v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Generally speaking, however, "a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone[.]" *In re Zetia*, 2021 WL 3379035, at *3 (citing Newberg on Class Actions § 3:12 (5th ed. 2021)). In this case, Defendant's challenge to numerosity overlooks the presumption. [ECF No. 84 at pp.17–19.]

Defendant concedes that "the proposed class appears to include approximately 65 properties." *Id.* at p.1. Of course, 65 is larger than 40—the threshold necessary to give rise to the presumption. Thus, even if the court accepts that the number of putative member properties is 65, as opposed to the 90 argued by Plaintiff, Plaintiff is entitled to the presumption that joinder is impracticable. In light of the presumption, the court has no difficulty finding Plaintiff met her burden as to Rule 23(a)(1)'s numerosity requirement.

## V.  Rule 23(b)(3): Predominance and Superiority.

The bulk of the parties' arguments surround the Rule 23(b)(3) requirements of predominance and superiority. Rule 23(b)(3) was added as part of the 1966 rule amendments. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). It was "designed to secure judgments binding all class members save those who affirmatively elected to be excluded" in situations where certification is "convenient and desirable." *Id.* at 614–15 (citing advisory committee's note to 1946 amendment). The rule provides that if the requirements of Rule 23(a) are satisfied, the action may be maintained as a class action when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, the two requirements—predominance and superiority.

The two requirements serve two purposes. "The predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Thorn*, 445 F.3d at 319 (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)); *see also Amchem*, 521 U.S. at 615 (noting the Advisory Committee sought to cover cases that would achieve "uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results"). "The superiority requirement ensures that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Thorn*, 445 F.3d at 319 (citing Fed. R. Civ. P. 23(b)(3)). And Rule 23 itself sets forth several factors the court should consider in deciding whether the putative class action meets the two requirements: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

The court addresses the parties' arguments as to each of the Rule 23(b)(3) requirements, in turn, below.

**A. Predominance.**

The court begins with predominance.[9] Plaintiff submits that the "entire case will turn on Highland/Burlington's conduct,[10] and the evidence and issues surrounding it." [ECF No. 76 at

---

[9] Defendant concedes that there are common issues, arguing only that Rule 23(a)(2)'s commonality requirement is of "no consequence" where a plaintiff cannot meet the predominance requirement. [ECF No. 84 at p.20.] Defendant submits that because Plaintiff fails to meet her burden on predominance, certification must be denied.

[10] Again, the present Motion was filed prior to the court granting Defendant's motion to reconsider a prior denial of partial summary judgment. [ECF No. 105.] The May 4, 2021 order concluded that Defendant was entitled to judgment as a matter of law on all claims to the extent they were

p.13.] In that regard, Plaintiff submits 11 common questions of law and fact "surrounding Highland's conduct, PCB's[sic] travel, and the effect of PCB's[sic]." *Id.* at p.17. These questions include:

1. "Whether PCB's[sic] emanated from the Highland Site;"

2. "Whether PCB's[sic] traveled along the drainage corridor;"

3. Whether PCB's[sic] [that] arrived on class members' properties came from [the] Highland Site;"

4. "Whether Highland/Burlington's acts and omissions resulted in the release of PCB's[sic];"

5. "Whether Highland's environmental due diligence regarding the presence of PCB's[sic] when it acquired the plant was reasonable under the circumstances;"

6. "Whether Highland was negligent in failing to warn property owners along the drainage corridor;"

7. "Whether PCB's[sic] emanating from the Highland Site to class members['] properties constitute trespass;"

8. "Whether the release of PCB's[sic] from the Highland Site to class members' properties constitutes a nuisance;"

9. "Whether Highland's assumption agreement provides for Highland to assume past liabilities associated with the real property acquired from Burlington;"[11]

10. "Whether presence of PCB's[sic] negatively impacts class members' property values;" and

11. "Whether presence of PCB's[sic] has deprived the owners of use and enjoyment of the property."

---

premised on *Burlington's* conduct in discharging and releasing PCBs as part of its fiberglass business operations. *Id.* The order did not rule on the claims to the extent they were premised on Defendant's *own* conduct or omissions that resulted in the movement of PCBs off of the property it purchased from Burlington.

[11] This question was answered by the court's May 4, 2021 order. *See* footnotes 2 and 10, *supra*.

*Id.* at pp.17–18.  Plaintiff contends that in addition to being common questions, these questions "also predominate any other issue in this matter."  *Id.* at p.18 n.23.

Further, according to Plaintiff, the "factual and legal determinations that go with" the "central issue," *i.e.*, "<u>what</u> did Highland/Burlington do or not do that caused PCB's[sic] to end up on Plaintiff's property," will "apply to *every* putative class member" and "predominate over any other issue."  *Id.* at p.23 (underline added).  Plaintiff's only support of this argument is her position that "courts routinely certify environmental contamination cases such as this"—support that this court has already deemed inapposite.  *Id.*; [*see also* ECF No. 95 at pp.11–14.]

In response, Defendant argues Plaintiff has not and cannot meet the predominance requirement because the "causes of action are . . . conduct-based . . . with individualized proofs."  [ECF No. 84 at p.20.]  Defendant proceeds to break down each element of the causes of action and identify individualized issues contained within the elements.

As to negligence, Defendant submits that its "supposed duty varies from putative class member to member," depending on where the property is located in relation to the Highland Site.  *Id.* at p.21.  As to the nuisance and trespass causes of action, Defendant argues that the nature of the property—residential, rental, commercial, developed, undeveloped, remediated, or un-remediated—will impact those claims.  *Id.*  Further, in South Carolina, to prove a nuisance claim, the plaintiff must be able to show an unreasonable interference with use and enjoyment of the property.  Defendant argues that each property owner will have different uses and ways of enjoying his or her property, and what may be unreasonable to one property owner is not to another; thus, individualized questions.  *Id.* at p.22.  Defendant concludes that the "[i]ndividual inquiries overwhelmingly outweigh any common questions of law and fact."  *Id.* at p.23.

Before addressing the parties' positions, a brief overview of the predominance requirement is instructive. The "predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement." *Gunnells*, 348 F.3d at 459 (Niemeyer, Jr. concurring in part and dissenting in part) (citing *Amchem*, 521 U.S. at 623). The United States Supreme Court has stated that "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The Fourth Circuit has similarly noted that "[t]he application of Rule 23 often turns on the cause of action." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019).

If "[a] cause of action [] includes a fact-bound element or a claim-specific affirmative defense [, it] may be less susceptible to class treatment than one that does not." *Id.* The focus of the predominance analysis being "common proof," with the "availability of such proof turn[ing] on what exactly needs to be proven." *Id.*; *see also Case v. French Quarter III, LLC*, No. 2:12-cv-2518, 2015 WL 12851717, at *6 (D.S.C. July 27, 2015) ("In mass tort cases, common issues of law and fact have been held to predominate 'where the same evidence would *resolve* the question of liability for all class members.") (emphasis added); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 72 (E.D.N.C. 2008) ("[A] court must ensure that class certification in a mass tort case really does foster [justice and judicial efficiency].").  Where a plaintiff "must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, the common issues do not predominate." *Case*, 2015 WL 12851717, at *6 (internal quotation omitted).

In this case, Plaintiff does not specifically address the elements of each cause of action in arguing predominance. Instead, she points to the alleged common questions and submits that the

question of Defendant's actions (or lack thereof) predominates all other individualized questions. Because the court agrees with Defendant that the focus of the predominance analysis is on the elements of each cause of action, it begins its predominance assessment there. Following assessment of each cause of action, the court will turn to Plaintiff's more general argument on predominance. This layered analysis ensures that the parties' arguments are sufficiently addressed and the court meets its obligations to perform a "rigorous analysis." *Dukes*, 564 U.S. at 350–51.

### 1. Negligence.

Plaintiff's first cause of action is negligence. "To establish a negligence cause of action under South Carolina law, the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006). For purposes of the predominance analysis, the court looks to each element and asks whether Plaintiff has met her burden of showing that the element is subject to common proof. *See, e.g., Sullivan*, 2019 WL 8272995, at *12 (finding predominance met where the question of liability "is fairly answered on the basis of the same evidence for all members of the property class").

As to the first element, Plaintiff identifies the duty as "to not allow or cause contaminants to migrate from [Defendant's] plant site." 3d Am. Compl. at ¶ 36. Defendant, in contrast, contends that the duty owed to a property owner "which abuts its property may be different from the duty [it] may owe to property owners 3.2 miles downstream, or upstream." [ECF No. 84 at p.21.] This court is not tasked with determining at this juncture whether there is or is not a duty owed to the putative class members. Rather, it need only assess whether the existence of a duty can be answered on a class-wide basis. And arguably, it can.

The difference between Plaintiff's position and Defendant's position is not so much the existence of a duty itself, but rather the reach of the alleged duty. Plaintiff submits, however, that her proof and legal arguments associated with a duty owed will be the same for all class members. Taken at its most basic level, the question, "does Defendant owe a duty to prevent contaminates from migrating off of the Plant Site," untethered to the causation question that will necessarily follow, can be answered on a class-wide basis.

Further, the second element, breach, would seem to logically follow the first. If the court assumes that Defendant owes a duty to prevent contaminates from migrating off of the Plant Site, a breach of that duty would be Defendant doing something to cause contaminates to migrate off of the Plant Site or failing to do something it knew (or should have known) would prevent contaminates from migrating off of the Plant Site. So, what is the act or omission that Plaintiff contends is the breach of the duty? And how does Plaintiff intend to prove it?

The identification of the act or omission is the very place where this case diverges from the 14 cases heavily relied on by Plaintiff. In those cases, the plaintiffs point to a specific act or failure by the defendant, such as an emission, leak, or disposal, and they seek to determine the defendant's liability associated with that identified act, if any. The focus in those cases being, is the defendant liable for the identified act or failure? One act or failure, one set of evidence, one answer. Here, Plaintiff identifies a variety of acts and omissions allegedly committed by Defendant and asks "*how* [those acts/omissions] did (or did not) contribute to the PCB's[sic] migrating from the Highland Site down the Drainage Corridor, to class members' properties." [ECF No. 76 at p.5 (emphasis added).] The question, is defendant liable to all of these plaintiffs for its emission of contaminates (*i.e.*, what would be the Burlington case), is a very different question from, *how* did Defendant contribute to PCBs migrating to putative class members' properties. The answer to the

"how" question, discussed more in the causation analysis below, may differ from one plaintiff to the next.

Perhaps realizing this distinction, Plaintiff submitted the following at the hearing on the motion:  The plaintiffs "are going to say, stormwater, land-disturbing activities, failure to remediate, insufficient remediation" constitute a "*combination*[] of actions or inactions" that qualify as Defendant's breach.  Transcript of Argument at 13:23–14:2 (emphasis added).  It bears repeating: This position or theory differs from those contamination mass tort cases that are most often certified pursuant to Rule 23(b)(3).  The present case is simply not one of those cases where Plaintiff is pointing to *one* identified act[12] or omission that serves as the alleged breach of a duty owed by Defendant.  There is no leak, discharge, emission, or disposal problem for Defendant.  While this is a very real distinction between this case and other mass tort cases certified pursuant to Rule 23(b)(3), the court must ask itself whether this is a distinction without a difference.  It

---

[12] The act may even be the same act occurring over and over by the same actor, a course of conduct. But it is still a single identifiable action that is simply repeated over a period of time, not a group of acts or omissions that together are alleged to have resulted in the breach or harm. *See* footnotes 4, 5, 6, *supra* (collecting cases).

Even in one instance where there were two separate businesses releasing the same toxin, the issue was whether the "plume" created by the combined toxins caused the contamination. *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 475 (S.D. Ohio 2004) (two companies released toxic chemicals into environment; plaintiff alleged they "merged together to form a single commingled 'plume' of groundwater contamination" that that "contaminated private wells and two public wells that provide drinking water to the entire city of Urbana").  The actions of both businesses were identifiable.  That case may be more persuasive here if Burlington and Defendant both operated businesses that released PCBs.  But again, that is <u>not</u> this case.  In this case, we have Burlington as the only business that released PCBs as part of its operations, and we have Defendant who is alleged to have caused the PCBs released by Burlington to migrate through some omission, action, or combination thereof.

concludes that it may be in terms of the "breach" element of negligence, but it is not with respect to the proximate cause element.[13]

Giving Plaintiff the benefit of the doubt that she can establish the first two elements of her negligence claim on a class-wide basis, Plaintiff's reliance on a *combination* of actions and omissions (all, some, or none of which could have impacted all, some, or none of the putative class members) troubles the court in the context of proximate cause.[14]  Stated simply, the court is unable to see how Plaintiff intends to prove damage proximately caused by the breach on a class-wide basis, without identifying the specific act or omission applicable to all putative class members.[15]

---

[13] In *McCormick v. Halliburton Energy Services, Inc*., the district judge acknowledged that timing may play a role in whether an alleged duty was violated.  No. 11-cv-1271, 2015 WL 918767, at *3 n.5 (W.D. Okla. Mar. 3, 2015) ("The Court, however, would note that whether Halliburton violated any duty could depend on the date the perchlorate allegedly migrated to a specific plaintiff's property[.]").  A similar timing issue plays a role here.  Defendant cannot be held liable for Burlington's actions in the release of PCBs.  [ECF No. 84 at p.12.]

[14] Logic would dictate that if these cases were brought as individual actions, one jury might find that Defendant's negligence in failing to have adequate storm water drainage caused a plaintiff to have PCBs on her property.  In another case, a jury might find that the cause was not the storm water drainage, but the Defendant's land-disturbing activities.  And in another, the jury might find it was none of the identified combination of actions that caused a plaintiff's injury.   These are not inconsistent judgments.  It is the reality that there are various potential "causes" at issue.  The different acts or omissions by Defendant could serve as causation for one plaintiff's injury and not another's.  *See Amchem*, 521 U.S. at 625 ("The Committee's warning[that mass tort classes are "ordinarily not appropriate" for class treatment], however, continues to call for caution when individual stakes are high and disparities among class members is great.").

[15] Even in *Bates*, the Honorable Solomon Blatt, Jr. recognized that "[i]ndividual offers of proof of proximate cause and damages for each plaintiff will become an inevitable necessity."  132 F.R.D. at 163.  There, Judge Blatt concluded that the question of defendant's liability with respect to the ground water contamination by jet fuel was predominate over the "individual questions of proof [that] will arise whether the suit proceeds individually or a class action."  *Id.*  As briefly mentioned above, if this case sought to hold Burlington liable for its release of PCBs into the environment, *Bates* would be more persuasive here.  That is not to say that the court fails to recognize the fact that Defendant remains liable for its own negligence, trespass, nuisance, etc., even if Burlington is also liable for negligence, trespass, nuisance, etc.  The problem for the court is that it has not been provided with evidence of a common method of proof to connect Defendant's actions, omissions, or a combination thereof to all of the putative class members.  The court is left wondering, *how* is Plaintiff going to prove that it is *Defendant's* combination of actions that caused all putative class members' injuries?

On an even more basic level, using the words of the district court in the Western District of Oklahoma, "[s]howing [Defendant] proximately caused an injury to a plaintiff is necessarily a highly individualized determination requiring each plaintiff to show that his property contains [PCBs] and that the [PCBs] came from the [Defendant's portion of the Highland] Site and not from some other source." *McCormick v. Halliburton Energy Servs., Inc.*, No. 11-cv-1271, 2015 WL 918767, at *3 (W.D. Okla. Mar. 3, 2015). Plaintiff here ignores two issues: (1) the fact-of-injury requirement and (2) the source of PCBs problem.

Plaintiff attempts to circumvent the fact-of-injury problem by including a requirement in the class definition that to qualify as a class member, your property must be "impacted" by PCBs "emanating" from the Highland Site. The fact that property must be tested for PCBs prior to inclusion of that property owner in the class does not change the fact that proof of an injury, *i.e.*, the existence of PCBs on the property, would have to be established individual by individual during a trial of this case. Importantly, this is not a situation in which Plaintiff claims she has a common method of proof to show that all properties within a certain radius of the Highland Site have PCBs on them. *Id.* (finding that as to negligence and trespass causes of action "plaintiffs must show that their properties contain perchlorate from the Site" and "[t]his showing would require an individualized presentation of evidence that each plaintiff's property contains perchlorate"). In this regard, "it is important to draw a distinction between the fact of injury and the measure of the resulting damages." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-400, 2009 WL 2208131, at *21 (E.D.N.C. July 22, 2009); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) (recognizing that the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 149

(4th Cir. 2001) (noting "individualized proof of damage causation[] would be essential to liability, destroying predominance").

Much of the discussion during the hearing surrounded the idea that individualized damage determinations alone are not enough to defeat a finding in favor of Plaintiff on the predominance requirement. *See, e.g., Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 516–17 (D.S.C. 2007) ("While the court may have to make individualized determinations regarding damages, the court finds this alone does not preclude certification."); *Gunnells*, 348 F.3d at 428 (noting necessity of making individualized determination of damages for each class member does not defeat certification). On a general level, that is true. But there is a problem with Plaintiff's reliance on this concept. In making the argument, Plaintiff conflates the fact of harm/injury/damage with the measure of damages. "[T]he '*[f]act of damage* pertains to the existence of injury, as a predicate to liability; *actual damages* involve the quantum of injury and relate to the appropriate measure of individual relief.'" *Beaulieu*, 2009 WL 2208131, at *21 (citing *Martino v. McDonald's Sys., Inc.*, 86 F.R.D. 145, 147 (N.D. Ill. 1980)). To establish *liability* for negligence, Plaintiff must be able to show that each class members suffered an injury, *i.e.*, the fact of damage, proximately caused by the actions of Defendant. The only method of proving the fact of damage for the putative class members is to present the evidence of PCBs on the specific property at issue on an individual-by-individual basis. Admittedly, this may not be a taxing display. But it is an individualized one, nonetheless.

The related proximate cause question is similar. Once Plaintiff shows that PCBs in fact exist on the putative class members' properties, Plaintiff will have to show that the alleged combination of Defendant's actions and omissions on the Highland Site caused the PCBs to flow onto the putative class members' properties. As this court ruled on summary judgment, Defendant did not

assume its predecessor's (Burlington) liabilities related to the discharge and release of PCBs.  [ECF No. 105 at p.16.]  Defendant, therefore, cannot be held liable for anything other than its *own* actions or omissions that resulted in the movement of PCBs from the Western Ditch, or other parts of the property it actually purchased, to the putative class members' properties.  *Id.*  While, as noted above, the Aroclor numbers serve as evidence that the PCBs on the properties are the same PCBs that were used at the Highland Site, proof of causation is not so easily generalized to a game of matching.

Burlington used PCBs for years prior to Defendant purchasing the Highland Site.  Further, "properties of individual class members are not all the same distance from the [Highland Site], do not have the same topography, and it cannot be said the [combination of acts and omissions] affected them all in the same way."  *Henry v. St. Croix Alumina, LLC*, No. 19-0036, 2008 WL 2329223, at *6 (D.V.I. June 3, 2008) (decertifying class originally certified pursuant to Rule 23(b)(3)).  Thus, questions of timing and source location seemingly play into the causation question.  *Id.* at *5 (distinguishing case of toxins moving as a result of a hurricane from other mass accidents or mass disasters, such as a plane crash or plant explosion, where "causation almost certainly will be common to all class members"); *see also Olden v. Lafarge Corp.*, 383 F.3d 495, 508 (6th Cir. 2004) (suggesting that "the fact that toxins may have originated in disparate sources within [the] facility" would be relevant if the facility owner's "liability [] would [] vary depending upon where within its facility toxins originated").

Of course, if Plaintiff can establish causation through a common method of proof, *i.e.*, the same evidence establishes causation for each and every putative class member, the proximate cause question may still be a common one.  *See, e.g., Sullivan*, 2019 WL 8272995, at *12 ("[A]t this point, it seems clear that the answer to how groundwater became contaminated lies in a common

body of evidence about practices at the Chem-Fab plant. This case is one in which generalized evidence will resolve the liability issues."). *But see Amchem*, 521 U.S. at 622 (noting "District Court concluded that predominance was satisfied based on two factors," one of which was "class members' shared experience of asbestos exposure," and holding that Rule 23(b)(3) "is not met by the factors on which the District Court relied"). This is where Plaintiff fails to meet her burden.

During the hearing, Plaintiff submitted that she intends to prove causation through an expert, Mr. David L. Hargett, who will testify that "stormwater, land-disturbing activities, failure to remediate, insufficient remediation, that those combinations of actions or inactions more likely than not cause[d] PCBs[sic] contamination throughout the drainage corridor, or at least arguably, [on] punitive[sic] class members' property" based on the "very defined drainage corridor."[16] Transcript of Argument at 13:22–14:3; *see also id.* at 15:23–16:12 (discussing evidence related to land disturbing activities and lack of adequate storm water controls). The court does not disagree that this testimony may very well be a common method of proof or common evidence on the proximate cause element. But the problem here is that Plaintiff did not present this common evidence to the court. Plaintiff submitted that his expert "will say" that the movement of PCBs was caused by Defendant but did not present to the court any common evidence that "does say" that same thing. Plaintiff conceded during the hearing that "the deposition is still ongoing, which is why we don't have a deposition transcript." *Id.* at 66:21–23. It is not this court's job to weigh that testimony at certification, but it is necessary for the evidence, testimony, or common method

---

[16] This statement does not connect causation to the properties, leaving a hole between Defendant's actions (or inactions) moving PCBs into the drainage corridor and the PCBs entering the putative class members' properties. Plaintiff's counsel later in the argument makes the connection between the drainage corridor and the properties, stating Mr. Hargett "can testify more likely than not, [the PCBs] ended up in our class members' property." Transcript of Argument at 17:1–7. But again, at certification, Plaintiff must actually show how she intends to prove the element by common proof. Plaintiff fails to cite any portion of the expert report that makes these connections.

of proof to be presented to the court to ensure that it is actually common to all putative class members.

This court has already emphasized the fact that it is required to take a "close look," *Amchem*, 521 U.S. at 615, and engage in a "rigorous analysis," *Thorn*, 445 F.3d at 318, to determine whether Plaintiff has met *her burden* on certification. But it is going to repeat it again here. As recognized by the Eleventh Circuit Court of Appeals, "at the certification stage," a plaintiff must prove "more than just a *prima facie* case, *i.e.*, more than just a 'pretty good case.'" *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011) (finding plaintiffs failed to carry their burden of proof). That has not happened here.

Without the evidence before it, the court cannot say that Plaintiff has met her burden[17] of showing common evidence or a common method of answering the proximate cause question for all putative class members. *See Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 287 (S.D. Ala. 2006) ("[A] central question is whether there is evidence of DDT and BHC contamination in the proposed class area today and, if so, what the nature of the evidence is. This topic consumed the bulk of the Class Certification hearing, and its potential linchpin status in the Rule 23 analysis warrants in-depth discussion of the record facts concerning the same."). As a result, this court cannot conclude that Plaintiff has met her burden of establishing that she has a common method of proof as to all of the *liability* requirements for a negligence claim. Individualized questions related to *liability*, in addition to damages, remain.

---

[17] Again, that is not to say that a common method of answering the question of proximate cause does not exist. The court has only heard that it exists. It has not seen the anticipated testimony or evidence.

## 2. Trespass.

Plaintiff's second cause of action is trespass. In South Carolina, "[t]respass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *Hedgepath v. Am. Tel. & Tel. Co.*, 559 S.E.2d 327, 337 (S.C. Ct. App. 2001). There are three elements of the claim: (1) an affirmative act by defendant; (2) an intentional invasion of the land; and (3) the harm caused is the direct result of the invasion. *Winley v. Int'l Paper Co.*, No. 2:09-cv-2020, 2012 WL 13047989, at *6 (D.S.C. Oct. 23, 2012) (quoting *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991)). Again, the question for the court is whether Plaintiff has met her burden of establishing that common methods of proof exist to prove Defendant's liability for trespass as to all putative class members.

In the Motion, Plaintiff does not specifically address the trespass cause of action. Instead, she relies on the general proposition that the common question of "*what* did Highland/Burlington do or not do that caused PCB's[sic] to end up on Plaintiff's property" is enough to establish predominance, given that "the factual and legal determinations that go with it apply to *every* putative class member." [ECF No. 76 at p.23 (emphasis added).] Defendant's response in opposition similarly fails to address the elements of the cause of action. [ECF No. 84 at p.22.] Despite the parties' failure to assess each element for the trespass cause of action,[18] the court must perform its own assessment as part of the mandated "rigorous analysis." *See Moodie v. Kiawah Island Inn Co.*, LLC, 309 F.R.D. 370, 375 (D.S.C. 2015) ("Plaintiffs bear the burden of demonstrating compliance with Rule 23, 'but the district court has an independent obligation to

---

[18] The court's own rigorous analysis in no way takes away from its acknowledgment that the burden of proving each requirement for certification remains with Plaintiff.

perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied.'" (citation omitted)).

For the first element, "affirmative acts," Plaintiff presumably will point to the combination of acts and omissions; namely, evidence of Defendant's knowledge of PCBs, its alleged failure to adequately maintain storm water drainage, and its movement of land.[19]  If Plaintiff can show that that it is this combination of acts that serves as the "affirmative act" for all putative class members, this may be an element that is capable of common proof.  But without the expert report or other evidence, the court cannot say that it is.

The second element requires a "showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act."  *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991).  Even with the combination of acts at issue, this element seems to be one capable of common proof.  Presumably, Plaintiff will submit the same evidence regarding Defendant's knowledge for each act and omission that makes up the combination.  For example, the evidence that Defendant knew or should have known that the lack of adequate storm water drainage would result in the migration of PCBs is subject to the same proof regardless of the identity of the plaintiff.

The third element of trespass is the most problematic for Plaintiff.  As to that element, Plaintiff must prove that (1) harm was caused (2) as a direct result of Defendant's actions.  This element suffers from the same individualized characteristics as the third element of negligence.  To establish Defendant's *liability* for trespass, Plaintiff must show that the alleged harm, *i.e.*, PCBs, exists as to each and every property and that those PCBs came from Defendant's portions of the

---

[19] The court is not suggesting that one or any of these actions or omissions constitute actionable trespass.  It recognizes that "[t]respass does not lie for nonfeasance or failure to perform a duty." *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991).

Highland Site. "This showing would require an individualized presentation of evidence that each plaintiff's property contains [PCBs] and that the [PCBs] came from the [Highland] Site and not from some other source."[20] *McCormick*, 2015 WL 918767, at *3; *Chen v. Amtrak*, No. 18-3617, 2019 WL 5294419, at *8 (E.D. Pa. Oct. 18, 2019) ("Although the Court does not require sampling of each property to establish numerosity, evidence as to whether Defendants' conduct—in applying the herbicide on a spot-treatment basis—constituted a trespass necessarily requires sampling of each class member's property."). Thus, the existence of harm is inherently individualized.

Turning to the "caused" and "direct result" requirements, the court notes that this analysis follows the analysis of "proximate cause" for negligence. The court will not repeat it here. Suffice it to say, the court is not ruling out the possibility that Plaintiff can prove the existence of PCBs on the properties was "caused" by Defendant and a "direct result" of Defendant's actions and omissions through common proof. The problem remains, however, that Plaintiff has not provided

---

[20] In this case, Plaintiff must show more than just the fact that PCBs came from the Highland Site. She must show that the PCBs at issue flowed from those portions of the Highland Site purchased by Defendant. Plaintiff did not submit any methodology or explanation for how she would show that the PCBs on the putative class members' properties are the PCBs from those portions of the Highland Site purchased by Defendant. Thus, the court harkens back to the language in *Olden*, suggesting that there may be an instance in which liability turns on "disparate sources *within* [the] facility." 383 F.3d at 508. The court understands the distinction Plaintiff attempts to make in this regard. Defendant is liable if its acts and omissions (assuming it was required to act and didn't) resulted in PCBs migrating off of the property *it purchased* and onto the plaintiffs' properties. Defendant remains liable even if Burlington is also liable for its own conduct that resulted in the migration of PCBs to plaintiffs' properties. The problem the court sees for Plaintiff is that she is lacking a common method of proof that the PCBs at issue are the PCBs flowing from those portions of the Highland Site that Defendant purchased from Burlington. The court does not see how this is a "red herring." *See* Transcript of Argument at 25:21–26:12. It is Plaintiff's burden to show that the contaminate at issue is the contaminate that came from Defendant's property, not another entity's property.

the court with the evidence or methodology that she contends serves as common proof of the element.

In sum, the court concludes that Plaintiff has not met her burden of showing that she can establish all requirements of *liability* for trespass through common proof. Individualized questions exist, not only to the measure of damages but also to the existence of liability.

### 3. Nuisance.

Finally, the court turns to Plaintiff's last cause of action—nuisance. "[N]uisance is a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." *Funderburk v. S.C. Elec. & Gas Co.*, 406 F. Supp. 3d 527, 539 (D.S.C. 2019) (citing *Shaw v. Coleman*, 645 S.E.2d 252, 258 (S.C. 2007), *aff'd sub nom. Funderburk v. CSX Transp., Inc.*, 834 F. App'x 807 (4th Cir. 2021). "If a lawful business is operated in an unlawful or unreasonable manner so as to produce material injury or great annoyance to others or unreasonably interferes with the lawful use and enjoyment of the property of others, it will constitute a nuisance." *Id.* (citing *Shaw*, 645 S.E.2d at 258).

Again, Plaintiff's Motion does not speak to the nuisance elements directly. Instead, she claims that the question of "[w]hether the release of PCB's[sic] from the Highland Site to class members' properties constitutes a nuisance" is a common one. [ECF No. 76 at p.17; *see also* ECF No. 95 at p.12 ("Here, the common factual links are plainly how PCBs came to be on the proposed class members' properties and whether Highland's conduct . . . amounted to nuisance or trespass.").] Defendant argues, however, that the questions of "unreasonable interference" and "use and enjoyment" are necessarily individualized. [ECF No. 84 at p.22.] Plaintiff then concedes as much in reply, suggesting however that the exercise of asking each plaintiff the question of whether the

PCBs unreasonably interfered with use and enjoyment of his or her property is "not an onerous" one. [ECF No. 95 at p.13.]

Without dispute, "in order to establish [Defendant's] liability for nuisance, [Plaintiffs] must prove an injury to the use and/or the enjoyment of the property[.]" *McCormick*, 2015 WL 918767, at *3. This is an individualized plaintiff-by-plaintiff determination. Some individualized questions may include: Did the plaintiff use the portion of the property now-contaminated by PCBs? How did the plaintiff use that portion of the property before PCBs? After? How did the existence of PCBs impact the plaintiff's enjoyment of her property? Etc. As these questions show, of the three claims, nuisance requires the most individualized analysis to establish liability—A fact Plaintiff does not dispute.

### 4. Plaintiff's Own Words.

Before closing out the analysis, the court turns to Plaintiff's own words on predominance. During the hearing, Plaintiff stated that "all we care about is what did Highland do or not do? That's the predominating question." Transcript of Argument at 27:25–28:2 (emphasis added). If the court assumes Plaintiff is correct, it must ask itself a simple question: What remains after that question is answered?

If the case is certified with that question being the predominate issue and the jury comes back and says Defendant acted (or failed to act when it should have acted) in a way that resulted in PCBs migrating off of the Highland Site, how does this answer establish Defendant's *liability* on all causes of action? The simple answer: It doesn't. Various aspects of liability remain undetermined.

The answer does not establish causation, that the PCBs flowing[21] from the combination of Defendant's actions or omissions reached the plaintiffs' properties. It does not establish fact of injury. It does not establish unreasonable interference. It does not establish lack of use and enjoyment of property. Stated simply, the answer to that question does not establish Defendant's liability for negligence, trespass, or nuisance.

As a final point on the predominance analysis, the court returns to where it started. As to Defendant, this case does not involve a mass environmental tort. Taking the language of the United States Supreme Court in *Amchem*, "mass tort cases arising from *a common cause* or disaster may, depending on the circumstances, satisfy the predominance requirement." 521 U.S. at 625 (emphasis added). A common cause or a common disaster is not the same as a combination of causes and omissions.

One case cited by Plaintiff in reply emphasizes this reality. In *Collins v. Olin Corporation*, the District of Connecticut noted that "certification is granted in a tort case where there is a 'demonstrated cohesiveness of the class due to *shared experience* that is confined in time and place and produces similar effects." 248 F.R.D. at 102 (citing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 477 (S.D.N.Y. 2005) (emphasis added)). Plaintiff has not identified this "shared experience" among the putative class members similar to the one that exists in those mass environmental tort cases that are commonly certified. There was no evidence submitted to the court to show that all putative class members "shared" the same experience with respect to Defendant. Some may experience flooding. Others may experience discharge related to the storm water drainage situation. And others may experience a combination of those actions or none at all. So the court is left wondering, what is the mass environmental tort at issue here? What action

---

[21] Pun intended.

are we pointing to and saying, liability for this action—this mass tort—is decided once and for all through this case?

In sum, the court finds that even though there are general questions of fact or law that are common to certain elements of Plaintiff's claims, there are significant and important individualized questions that must be answered before Defendant's liability can be determined.  In light of these important individualized determinations, the court cannot conclude that Plaintiff has met her burden of showing that common questions predominate.  Even if Plaintiff establishes through common proof that Defendant knew of the existence of PCBs on its property (either before or at the time of purchase), it had a duty to warn property owners of the existence of those PCBs, and its actions or omissions resulted in the movement of the PCBs, this common proof does not alone establish Defendant's liability on any of the three causes of action.  Plaintiff must be able to answer the individualized questions raised above affirmatively before *liability* is established.  *See McCormick*, 2015 WL 918767, at *4 ("[T]he common facts would not establish a single plaintiff's entitlement to recover on any theory of liability, or even show that a single plaintiff is aggrieved. Simply put, the individual issues would dwarf whatever common issues there may be, such that a vast array of mini-trials would be required for each class member if certification were granted.").

## B.  Superiority and Factors.

Before reaching Plaintiff's arguments regarding issue certification, the court will briefly touch on superiority and the factors listed for the court's consideration in Rule 23(b)(3).  The superiority requirement ensures that "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiff submits that the use of the class action device here will result in conservation of "valuable judicial resources and achieve economies of time, effort, and expense, assuring

uniformity and avoiding repetitive actions." [ECF No. 76 at pp.25–26.] Defendant disagrees, arguing that "the class action device is not the superior device to adjudicate the claims of any potential class members, which are inherently specific and individual." [ECF No. 84 at p.24.] Because the court agrees with Defendant individualized issues related to lability remain, it also agrees with Defendant that a class action is not a superior method of adjudicating the action.

An assessment of the Rule 23(b)(3) factors affirms this conclusion. First is the "class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). There are five (5) actions filed by individual plaintiffs based on the same set of facts. *See* footnote 1, *supra*. Those actions were consolidated for discovery purposes but are proceeding as individual actions against Defendant. Thus, the court is left with the presumption that those individuals (at the very least) have an interest in controlling their own separate actions. Therefore, this factor weighs *against* certification.[22]

The second factor is closely related to the first. It involves the "extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). This factor also weighs *against* certification. All five of the aforementioned cases are proceeding in accordance with their scheduling orders. A motion for partial summary judgment was filed by Defendant in all five actions and ruled on in all five actions. Additionally, all cases are set for jury selection to begin on February 23, 2022.

---

[22] This is not a case in which there is evidence that it is "unlikely that individual class members will bring separate actions to vindicate their claims" or "no such litigation currently exists." *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 380 (D.S.C. 2015). We have individual actions here. Footnote 1, *supra*.

The third factor, "desirability or undesirability of concentrating the litigation of the claims in the particular forum," Fed. R. Civ. P. 23(b)(3)(C), does not really favor or disfavor certification.[23] All of the actions filed to date were either filed in this District or removed to this District by Defendant. The cases pending before this court have all been designated "related" and are all assigned to the undersigned as the presiding judge.

Lastly, the court considers the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). As described in the predominance analysis above, difficulties will arise in the context of certain elements of Plaintiff's claims. Based on the information currently before the court, Plaintiff cannot establish Defendant's liability *in toto* based on common methods of proof. This action involves individualized questions that impact both liability *and* damages. In the court's opinion, a class would not be manageable.

In addition to the predominance issues, the court concludes that Plaintiff has not met her burden of establishing superiority for a Rule 23(b)(3) class. This does not end the court's analysis, however. Plaintiff argues an alternative basis for certification—Rule 23(c)(4).

## VI. Rule 23(c)(4): Issue Certification.

"In the event this Court elects against certifying a Rule 23(b)(3) class," Plaintiff asks this court to "certify an 'issues class' on the subject of liability." [ECF No. 76 at p.27.] Plaintiff contends that the "core common liability questions regarding Highland/Burlington's conduct vis-à-vis PCB's[sic]" are appropriate for certification. *Id.* During the hearing, Plaintiff outlined more specific questions for issue certification: (1) Did Highland know of PCB contamination? (2) Should Highland have known of PCB contamination? (3) Did Highland's action cause PCB flow?

---

[23] Even if the court concluded that this factor weighed in favor of certification, it would not change the result.

(4) Is there ongoing contamination? (5) Did these actions or inactions cause PCBs to end up on the properties? (6) If they did, does that amount to trespass, a nuisance, and negligence? and (7) Should they have warned these people?  Transcript of Argument 27:15–22; *see also id.* at 70:17–71:17.  Basically, Plaintiff seeks to issue certify most, if not all, of the questions it initially argued as "common" questions. In response, Defendant contends that because there remain significant individualized issues related to liability, "this case is not suited to issue certification." [ECF No. 84 at p.25.]  The court is, again, compelled to agree with Defendant.

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  The Fourth Circuit is clear that "subsection 23(c)(4) should be used to separate 'one or more' *claims*[24] that are appropriate for class treatment, provided that within that claim or claims (rather than within the entire lawsuit as a whole), the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met."  *Gunnells*, 348 F.3d at 441 (emphasis added).  In such a case, the plaintiff must still satisfy all of the requirements of Rule 23(a) and (b)(3) in the context of the claim or issue she seeks to certify.  If a court "chooses to limit class certification only to certain common issues under Rule 23(c)(4), those issues presumably predominate and seemingly satisfy the first element of Rule 23(b)(3)."  *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-1800, 2015 WL 127930, at *12 (D.S.C. Jan. 8, 2015).  As a result, the question of issue certification often turns on the superiority requirement.

---

[24] Like the Honorable Joseph F. Anderson, the undersigned agrees that the same reasoning in *Gunnells* would "appl[y] to whether common *issues* can be certified under 23(c)(4) without demonstrating predominance as to the case as a whole."  *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-1800, 2015 WL 127930, at *11 (D.S.C. Jan. 8, 2015) (emphasis added).

At the outset, the court declines to certify Defendant's "liability" as a Rule 23(c)(4) issue class, Plaintiff's original request. The question of *liability* in this case involves significant individualized questions. The predominance problems that exist with respect to the three causes of action remain with respect to the "issue" of Defendant's liability. This same problem exists to the extent Plaintiff asks the court to certify the individual causes of action: (1) Was Defendant negligent; (2) Does the presence of PCBs on plaintiffs' property amount to a trespass; and (3) Does the presence of PCBs on a plaintiff's property amount to a nuisance? Certifying these issues would be no different than certifying a Rule 23(b)(3) class. The court will not allow an end-run around Rule 26(b)(3) certification by rephrasing the same question as an "issue" pursuant to Rule 26(c)(4).

Turning to the remaining specific "issue" questions identified during the hearing, the court cannot find that adjudication of these issues as a class is "superior to *other available methods* for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added); *Parker*, 2015 WL 127930, at *14 (finding predominance met on issues proposed, but superiority lacking). In this regard, the court cannot help but turn to Judge Anderson's assessment of Rule 23(c)(4) in *Parker*. There, Judge Anderson declined to certify a Rule 23(c)(4) issue class because the issue class left proximate cause and damages to be decided in individual cases. *Parker*, 2015 WL 127930, at *14–*15. That is the exact problem that exists here. Many of the questions are "common threshold issues, some of which bear on the question of liability," but the fact remains that Defendant's *liability* as to the three causes of action will not be determined as a result of the trial on the certified issues. *Id.* at *14.

Admittedly, there are substantive differences between the subject matter of the litigation in *Parker* and the alleged contamination at issue here. [*See* ECF No. 132 (arguing "*Parker* could not be legally or factually more distinguishable than the case before [the court]").] The court

acknowledges that fact. The court also acknowledges that more would be gained by an issue class here than was going to be gained in *Parker*. But the court also remains convinced that, just as in *Parker*, a class action trial on the issues identified by Plaintiff (leaving the remaining pieces of lability and damages to be determined at individual trials) would render the "significance of the [class action] [] easily [] overwhelmed by the later evidence . . . regarding proximate cause and damages." *Id.* at *15. Issue certification may be appropriate in certain circumstances, but the reality is that it is "little used" for good reason. *Id.*

Moreover, it remains Plaintiff's burden to establish that certification of the issues is superior to "other available methods for fairly and efficiently adjudicating the dispute." Fed. R. Civ. P. 23(b)(3). Plaintiff has not done that. Defendant, in contrast, identified an alternative, "a bellwether trial approach accompanied by collateral estoppel where applicable." [ECF No. 125 at p.1]; *see also Parker*, 2015 WL 127930, at *14 (noting "the time-honored doctrine of collateral estoppel to quickly resolve that issue in subsequent individual cases"), *15 (noting "potential alternative methods for attempting to avoid relitigating an issue in each individual trial," including "use of collateral estoppel (either defensive or offensive), where appropriate"). Again, the court agrees with *Parker* that this seems like an appropriate, fair, and efficient alternative because these cases are "unlike many class actions where the plaintiffs' claims, if successful, are of minimal value" and "the possibility of applying collateral estoppel from decision in earlier trials (assuming Plaintiffs are successful in their earlier trials), should provide adequate incentive for class members to employ counsel, pay a filing fee, and proceed with a stand-alone action." *Id.* at *16.

This court parsed pages and pages of briefing, analyzed over 30 cases cited by the parties, and held a lengthy hearing on this matter. And it, perhaps more than either party, is acutely aware of the need for fair and efficient adjudication of disputes. However, despite the many hours and

extensive analysis, the court remains unable to see how an issue class would significantly increase the efficiency of the litigation. Even though the "common issue" identified by Plaintiff here is not as basic as the common issues presented to Judge Anderson in *Parker*, the same problem exists: "As the common issues are narrowed down to make them sufficiently 'common,' the desirability of issue certification is diminished[.]" *Id.* It remains Plaintiff's burden to establish all elements of certification, including superiority. The court is not persuaded that Plaintiff has met her burden in that regard.

## CONCLUSION

In accordance with the foregoing, Plaintiff Janet Tillman's Motion to Certify Class, ECF No. 76, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

September 30, 2021
Florence, South Carolina